1  BLECHER & COLLINS, P.C.
   Maxwell M. Blecher (State Bar No. 26202)
2    mblecher@blechercollins.com
   Donald R. Pepperman (State Bar No. 109809)
3    dpepperman@blechercollins.com
   Jennifer S. Elkayam (State Bar No. 238619)
4    jelkayam@blechercollins.com
   515 South Figueroa Street, Suite 1750
5  Los Angeles, California  90071-3334
   Telephone: (213) 622-4222
6  Facsimile: (213) 622-1656

7  Attorneys for Plaintiff
   AquaStar Pool Products, Inc.

8

FILED
CLERK U.S. DISTRICT COURT

AUG 10 2011

CENTRAL DISTRICT OF CALIFORNIA
BY _____ DEPUTY

9          UNITED STATES DISTRICT COURT

10         CENTRAL DISTRICT OF CALIFORNIA

11         WESTERN DIVISION  CV11 06586 (BM (PJWX)

12  AQUASTAR POOL PRODUCTS,          )  CASE NO. CV
    INC., a California corporation,    )
13                                     )  CIVIL COMPLAINT FOR
            Plaintiff,                 )  DAMAGES AND INJUNCTIVE
14                                     )  RELIEF FOR VIOLATIONS OF:
       vs.                             )
15                                     )  1) SECTION TWO OF THE
    HAYWARD INDUSTRIES, INC., a        )  SHERMAN ACT – ACTUAL
16  New Jersey corporation; HAYWARD    )  MONOPOLIZATION; 2) SECTION
    POOL PRODUCTS, INC.,               )  TWO OF THE SHERMAN ACT –
17                                     )  ATTEMPT TO MONOPOLIZE; 3)
            Defendants.                )  SECTION ONE OF THE
18                                     )  SHERMAN ACT; 4) SECTION 3
                                       )  OF THE CLAYTON ACT; 5)
19                                     )  INTENTIONAL INTERFERENCE
                                       )  WITH PROSPECTIVE
20                                     )  ECONOMIC ADVANTAGE AND
                                       )  ACTUAL CONTRACTUAL
21                                     )  RELATIONS; AND 6) CAL. BUS.
                                       )  & PROF. CODE § 17200 et seq. -
22                                     )  UNFAIR COMPETITION
                                       )
23                                     )  [DEMAND FOR JURY TRIAL]
                                       )
24  _____)

25        Plaintiff AquaStar Pool Products, Inc. ("AquaStar") files this

26  Complaint against defendants Hayward Industries, Inc., and Hayward Pool

27  Products, Inc. (collectively defendant "Hayward") to secure damages and

28  injunctive relief, and demanding trial by jury, claims and alleges as follows:

BLECHER & COLLINS
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW

# I.

## SUMMARY OF THE CASE

1. This lawsuit centers around defendant Hayward's deliberate and continuing attempt to monopolize and monopolize the market for residential swimming pool automated suction-side cleaners and replacement parts in the United States. Hayward possesses a market share of approximately 65% in this market.

2. Defendant Hayward conceived and implemented a multifaceted anticompetitive scheme to exclude plaintiff AquaStar from this growing and lucrative market. Within the last few years, AquaStar has developed, manufactured and sold a more efficient and cost-effective competing automatic pool cleaner and a wide array of replacement parts for its own cleaners as well as certain models sold by Hayward. To thwart AquaStar's lower priced competition, defendant Hayward has engaged in a campaign that consists of at least the following anticompetitive and monopolistic acts: (a) induced a group boycott of AquaStar's automatic pool cleaner products; (b) conditioned the payment or allowance of discounts, rebates and/or other incentives provided to actual and potential customers of Hayward pool products on an agreement or understanding not to purchase or distribute AquaStar automatic pool cleaners/replacement parts; (c) offered retroactive rebates or bribes to customers who agree not to distribute or sell AquaStar pool cleaners/replacement parts; (d) itself purchased quantities or the inventory of AquaStar automatic pool cleaners/replacements parts from retailers/distributors for the purpose of depriving consumers of the opportunity or alternative of purchasing such competitive AquaStar products; and (e) threatened to revoke or terminate Hayward-authorized dealer or warranty status from buyers/distributors that elect to purchase or distribute AquaStar pool cleaners/replacement parts.

3.  As a consequence of Hayward's conduct, competition in this product market has been suppressed and virtually eliminated and consumers in that market have suffered a loss of choice and have been required to pay higher prices for cleaners and replacement parts to Hayward than would otherwise be the case in a competitive market. Plaintiff AquaStar, the competitive process and consumers have suffered antitrust injury by reason of Hayward's unlawful, unfair and trade restraining conduct.

## II.

## JURISDICTION AND VENUE

4.  This Complaint is filed and this action is instituted under Sections 4 and 16 of the Clayton Act (15 U.S.C. §§ 15, 26) to recover the damages caused by, and to secure injunctive relief against, defendant Hayward for its past and continuing violations of Sections 1 and 2 of the Sherman Act (15 U.S.C. §§ 1, 2) and Section 3 of the Clayton Act (15 U.S.C. § 14), as alleged herein.

5.  This Court has original and exclusive jurisdiction over the subject matter of this civil action under 15 U.S.C. § 15 and 28 U.S.C. §§ 1331 and 1337. This Court may exercise supplemental jurisdiction over the state law based claims pursuant to 28 U.S.C. § 1367. Defendant Hayward maintains an office and transacts business on a systematic and continuous basis within this District, and may be found here, within the meaning of 15 U.S.C. §§ 15, 22 and 28 U.S.C. § 1391. Further, the unlawful acts alleged herein were performed and occurred in material part within this District.

## III.

## INTERSTATE COMMERCE

6.  The actions complained of herein have, and will, restrain and adversely affect interstate commerce in that defendant Hayward sells its

1  products and services across state lines.  Further, defendant Hayward

2  purchases goods and supplies in interstate commerce.

3                                    IV.

4                            **THE PARTIES**

5       7.  Defendant Hayward Industries, Inc., is a corporation organized

6  and existing under the law of New Jersey with its corporate headquarters

7  located in Elizabeth, New Jersey.  Defendant Hayward also has a

8  manufacturing facility located in Pomona, California.  Defendant Hayward

9  Pool Products, Inc., is a wholly owned subsidiary/division of defendant

10  Hayward Industries, Inc.

11      8.  Plaintiff AquaStar Pool Products, Inc., is a corporation organized

12  and existing under the laws of California with its principal place of business

13  located at 1666 Garnet Avenue, San Diego, California 92109.  AquaStar

14  also has manufacturing facilities located in Ventura and Valencia,

15  California.

16                                    V.

17      **FACTUAL ALLEGATIONS COMMON TO ALL CLAIMS**

18      9.  The National Swimming Pool Foundation has estimated that there

19  are approximately 10 million swimming pools (above and in-ground) in the

20  United States.  Most swimming pools are located in warm weather states,

21  which primarily include: California, Nevada, Arizona, Texas and Florida.  At

22  least 60%-70% of swimming pools use some type of automated pool

23  cleaner.

24      10.  In the 1970s, the first automatic vacuum pool cleaner was

25  introduced.  Automated pool cleaners require minimal human involvement

26  or intervention to sweep and clean a pool.  Currently, there are three main

27  types of automated pool cleaners in use in the United States, and they are

28  classified by the drive/propulsion mechanism utilized: (a) suction-side

BLECHER & COLLINS
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW

1   pressure driven; (b) return-side/pressure driven; and (c) robotic/electronic.

2       11.  The most popular and widely used automatic pool cleaner is the
3   suction-side pressure vacuum driven, which is the product at issue in this
4   lawsuit.  Suction-side cleaners currently comprise approximately 70%-80%
5   of the automatic pool cleaners manufactured and sold in the United States.
6   This type of pool cleaner unit is typically connected with a small diameter
7   flexible rubber/plastic hose to a swimming pool's skimmer box suction inlet,
8   or to a dedicated vacuum line located on the sidewall of the pool.  The
9   suction supplied by the pool's existing filtration pump causes the cleaner
10  unit to move forward along the floor and walls of the pool while sucking up
11  dirt, debris and sediment as it moves along.  A filter cannister integrated
12  into the vacuum hose and/or the pool's main filter system collects the dirt,
13  debris and sediment collected by the cleaner unit.  Suction-side cleaners
14  can be installed in 10-15 minutes without the necessity of tools.  The
15  average cost for an automated suction-side pool cleaner ranges from
16  approximately $300 to $600.

17      12.  Return-side/pressure driven type automatic pool cleaners require
18  high amounts of flow or movement to function.  Consequently, a separate
19  dedicated electric pump (in addition to the pool's existing filtration pump) is
20  required for the use of a pressure driven pool cleaner unit.  In some cases,
21  the pool's plumbing can be reworked or modified to accommodate this type
22  of cleaner.  The dirt, debris and sediment picked up by the cleaner is
23  collected in a filter bag attached to the unit.  The cost of installing a
24  separate dedicated booster pump is substantial ($400-$600) as is the
25  additional electricity cost to power the pump.  For these reasons, this type
26  of technology/process is not as popular or competitive to suction-side pool
27  cleaners.  These cleaners typically range in cost from $300-$900 for the
28  unit alone.  Pressure-side pool cleaners currently comprise approximately

BLECHER & COLLINS
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW

1   10%-15% of all automated cleaners sold.

2       13.   Finally, the third category of automated pool cleaners are

3   robotic/electronic types.  Robotic cleaners are used almost exclusively in

4   commercial swimming pools and are very costly to acquire and operate.  A

5   robotic/electronic automated cleaner can range in cost from $500-$5,000.

6   Most of these units also are powered by electricity and require that an

7   electric cord be placed in the pool and be plugged into an external power

8   source.  This pool cleaner has a self-contained propulsion vacuum and

9   filtration systems and which operate completely independent of the pool's

10  pump and filter.  By reason of the cost, dangers and complexity associated

11  with these types of pool cleaners, only approximately 5%-10% of the

12  automated pool cleaner business is occupied by such cleaners.

13      14.   Suction-side automated pool cleaners are not considered to be

14  substitutes for, and are not reasonably interchangeable with, either return-

15  side/pressure driven or robotic type pool cleaners.  Nor are either return-

16  side/pressure driven or robotic type automated pool cleaners substitutes

17  for, or reasonably interchangeable with, suction-side automated pool

18  cleaners.

19      15.   Defendant Hayward touts itself as the largest manufacturer and

20  supplier of residential pool equipment in the world.  Hayward manufactures

21  and sells a broad array of residential swimming pool and spa products,

22  including electric pumps, filters, heaters, chlorination systems, heat pumps,

23  lighting fixtures and automated pool cleaners (suction-side and robotic).

24  Hayward claims that it has sold billions of dollars worth of swimming pool

25  and related products in the United States.  The suction-side automated

26  pool cleaners sold by Hayward include the Navigator, PoolVac and

27  Arneson lines.  Hayward also sells replacement parts for its pool cleaner

28  units. These pool cleaners and associated replacement parts have been

BLECHER & COLLINS
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW

1  marketed and sold by Hayward over the last 20 years.

2    16.  Plaintiff AquaStar was founded in October 2003 on the belief that
3  better equipment leads to better, safer, more enjoyable swimming pool and
4  spa experiences.  AquaStar's mission and goal was to invent, design and
5  manufacture innovative pool products that keep consumers safe and its
6  customers satisfied.  AquaStar initially produced and supplied quality pool
7  and spa drains and suction outlet covers, skimmers and other plastic
8  fittings.  All of AquaStar's products are designed, engineered,
9  manufactured and assembled in the United States.

10    17.  In or about the Summer of 2009, AquaStar began to plan, design
11  and develop a line of suction-side automatic pool cleaners known as the
12  StarzTruck, to compete with Hayward's line of pool cleaners.  AquaStar's
13  StarzTruck units sell for approximately 25% less than comparable Hayward
14  pool cleaner units.  AquaStar also designed and engineered various
15  replacement parts and kits to be used to repair and maintain Hayward's
16  automatic pool cleaners.  These products are marketed and sold by
17  plaintiff AquaStar under the ProStar brand name.

18    18.  Hayward has openly expressed its discontent with AquaStar's
19  recent entry into this market with a competing automatic pool cleaner and
20  introduction of less costly replacement parts (20%-40% less) for use in
21  repairing Hayward pool cleaner units.  Indeed, Hayward has sent letters
22  and e-mails, and made verbal statements, to actual and prospective buyers
23  and distributors of AquaStar's pool cleaner units/parts threatening and
24  discouraging them from doing business with its much smaller rival
25  AquaStar.  Recently, at a trade convention in Vail, Colorado, Hayward's
26  Western Division Vice-President, George Metkovich, approached
27  AquaStar's Co-Founder and President, Olaf Mjelde, and in substance and
28  effect threatened him that Hayward would do whatever it takes to keep

BLECHER & COLLINS
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW

1    AquaStar out of the market, including selling product at Hayward's cost.

2        19.  The overwhelming majority of swimming pool products are sold

3    to and distributed through a small number of regional and national

4    networks of distributors.  These distributors typically resell to thousands of

5    retailers and pool builders and contractors.  Open and unrestricted access

6    to these multi-outlet regional/national distributors is absolutely critical to a

7    manufacturer's ability to get its pool products into the proper distribution

8    channels and effectively compete in the United States market.  Because of

9    the structure of the market, plaintiff AquaStar cannot adequately or

10   practicably reach or sell directly to these retailers, pool builders and

11   contractors by reason of their preference to deal with wholesale distributors

12   that carry and stock products from multiple manufacturers.  Consequently,

13   to be competitive and meaningfully penetrate the market, plaintiff AquaStar

14   must have access to these regional and national distributors.

15       20.  Hayward has undertaken bold, calculated and systematic

16   policies and steps to deliberately hinder and foreclose AquaStar's access

17   to these distributors.  On April 15, 2010, defendant Hayward sent a letter to

18   its customers (distributors and retailers) representing that "non-genuine

19   Hayward replacement parts" being manufactured and sold by competitors

20   for its automatic pool cleaners "do not use comparable materials,

21   manufacturing specifications or certified testing."  The letter also expresses

22   Hayward's view that non-Hayward replacement parts are not safe and can

23   cause "inferior performance, ha[ve] the potential to shorten the life of the

24   original product, and can also damage associated equipment or pool

25   surfaces."  Currently, AquaStar is the only competitor (in addition to

26   Hayward) that produces and sells replacement parts for Hayward's pool

27   cleaners.

28       21.  The widely disseminated Hayward customer letter also set forth

- 8 -

BLECHER & COLLINS
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW

1   the following multi-element policy, which applies to automatic pool cleaner

2   units/parts: (a) Hayward will only guarantee the quality, performance and

3   safety of its automatic pool cleaner products only when used in

4   combination with genuine Hayward-manufactured replacement parts and

5   that use of non-Hayward parts "will invalidate any warranty that may remain

6   on the product"; (b) in order "[t]o maintain Hayward Authorized Service

7   Center status and referrals, service centers must use Genuine Hayward

8   parts exclusively when it relates to Hayward products"; (c) "[p]articipation in

9   any Hayward Distributor, Dealer, or Service Provider incentive program

10  [rebates/discounts] is dependent upon the exclusive use of Genuine

11  Hayward parts for all" automatic pool "cleaner parts.  Failure to comply will

12  result in the loss of all program benefits"; and (d) "[m]isrepresentation of

13  generic parts as Genuine Hayward parts will result in the loss of all

14  Hayward incentives, rebates, or programs and may be subject to legal

15  action."

16      22.  This anticompetitive and exclusionary policy implemented by

17  Hayward induced a group boycott and/or concerted refusal among and

18  between Hayward's distributors/retailers not to do business with or

19  purchase pool cleaner products from AquaStar.  As a direct and proximate

20  result of Hayward's unlawful conduct, various distributors have refused to

21  deal with AquaStar, cancelled pending orders and/or returned product that

22  had been purchased from AquaStar.

23      23.  As alleged above, defendant Hayward is the leading

24  manufacturer and seller of a wide variety of pool/spa products which

25  distributors, and their retailer, builder and contractor customers, need to

26  have.  Because of the breadth of the products (beyond just the pool

27  cleaner products) offered by defendant Hayward, its threats not to deal

28  with customers and terminate or withdraw rebate and incentive programs

BLECHER & COLLINS
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW

1  poses a potential significant impact and is a serious weapon in effectively
2  dissuading these distributors from not purchasing from or dealing with
3  plaintiff AquaStar.

4      24.  As a follow-up, on February 22, 2011, Hayward sent out another
5  "policy" letter to its customers for automatic pool cleaner products.  This
6  letter touted the effectiveness of Hayward's previously instituted
7  exclusionary policy: "We are pleased to report the response from you, our
8  loyal Hayward customers, to this policy was extremely positive."  The new
9  policy "memo" was intended to notify customers of the "expansion of the
10  policy" to also broadly include: "Hayward customers that wish to continue
11  participating in any Hayward Distributor, Dealer, or Service Provider
12  incentive program may not sell copied or 'knock-off' Hayward automatic
13  pool cleaner whole-goods that use parts that Hayward believes are
14  positioned as direct replacements for Hayward genuine parts.  Failure to
15  comply will result in the loss of all program benefits."

16      25.  Hayward's customers have been specifically advised by
17  Hayward that these policies apply to purchases of automatic pool cleaner
18  replacement parts manufactured and sold by plaintiff AquaStar.

19      26.  Hayward has also targeted specific actual and potential
20  buyers/distributors of AquaStar pool cleaner units/replacement parts with
21  threats and anticompetitive tactics.  For example, Pool Corp. (200 stores in
22  the United States), who is AquaStar's largest customer/distributor for non-
23  pool cleaner products, has advised that it will not buy or distribute
24  AquaStar's line of pool cleaner units/parts based on Hayward's threat that
25  because to do so would result in the loss of Hayward's rebate program on
26  all products.  Pool Corp. had placed automatic pool cleaner product orders
27  with AquaStar and then within a few days cancelled those orders.
28  Similarly, in April 2010, pool and spa product wholesale distributors

BLECHER & COLLINS
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW

1   Gorman Company (Florida) and HornerXpress (Florida) ordered pool
2   cleaner product samples from AquaStar and then advised that they could
3   not sell AquaStar products because of termination threats from defendant
4   Hayward.

5       27.  At a recent conference of Independent Pool and Spa Service
6   Association ("IPSSA") members in Corona, California, Hayward's National
7   Sales Manager stood up and addressed the attendees.  He discouraged
8   members from buying any AquaStar pool cleaners/parts by threatening to
9   eliminate Hayward's rebate/incentive program for any distributors that were
10  considering purchasing AquaStar products.  The IPSSA is headquartered
11  in Los Alamitos, California, and its membership includes the leading pool
12  service professionals, manufacturers and distributors of swimming
13  pool/spa products in the United States.

14      28.  Florida Water Products ("FWP") is a large pool product
15  wholesale distributor with multiple locations in Florida and Texas.  Between
16  2008 and 2011, AquaStar sold in excess of $150,000 of non-pool cleaner
17  products to FWP.  In February 2011, FWP placed an order with AquaStar
18  to purchase in excess of $100,000 of automatic pool cleaner units.  The
19  units were ready to ship when FWP abruptly put the order on hold and then
20  subsequently cancelled the order due to threats from defendant Hayward
21  that it would stop selling any products to FWP if they purchased any pool
22  cleaner products from AquaStar.

23      29.  Keller Supply Company (Leisure Division) is a large independent
24  wholesale pool product supplies distributor serving the Pacific Northwest.
25  In September 2010, Keller ordered pool cleaner replacement parts
26  samples from plaintiff AquaStar but then advised that they could not stock
27  or distribute such parts based on threats from Hayward.  In
28  January/February 2011, Keller placed a small order for parts then ceased

BLECHER & COLLINS
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW

1   further purchases due to further and continued threats from Hayward.  In

2   March 2011, for an open house show, Keller ordered a pallet (15 units) of

3   AquaStar StarzTruck pool cleaner units.  After Keller received the pallet, a

4   Hayward representative paid a visit and through threats intimidated Keller

5   into returning the pallet to AquaStar.

6        30.  Pool Electrical Products, Inc., is a wholesale independent

7   distributor of pool products (18 branches) in California and Texas.  In early

8   2011, this distributor purchased a significant amount of StarzTruck pool

9   cleaners and replacement parts from AquaStar.  To prevent these products

10  from getting into the hands of consumers, Hayward purchased and took

11  possession of Pool Electrical Products, Inc.'s inventory of AquaStar pool

12  cleaner units/parts.  The distributor then reported that because of threats it

13  received from Hayward, it could no longer make purchases from AquaStar.

14       31.  Defendant Hayward's anticompetitive and predatory conduct has

15  also caused other actual and potential customers to cease purchases from

16  plaintiff AquaStar or to not purchase in the first instance.  Such customers,

17  include but are not limited, to the following:  Cloud Supply (Arizona); Island

18  Pool & Supply (Hawaii) and H20 Pool Products.

19                                    **VI.**

20                          **CLAIMS FOR RELIEF**

21

22                       **FIRST CAUSE OF ACTION**

23                   **(Actual Monopolization in Violation of**

24              **Section 2 of the Sherman Act (15 U.S.C. §2))**

25       32.  Plaintiff AquaStar hereby realleges and incorporates by

26  reference each allegation set forth in Paragraphs 1 through 31, as if set

27  forth in full herein.

28       33.  Section 2 of the Sherman Act (15 U.S.C. § 2) prohibits, *inter alia*,

BLECHER & COLLINS
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW

1  the willful monopolization of any part of the trade or commerce among the

2  States.

3      34.  The relevant product market (or submarket) for antitrust

4  purposes in this case is defined as residential swimming pool automatic

5  suction-side pool cleaners and associated replacement parts.  The relevant

6  geographic market for antitrust purposes is the United States.

7      35.  Hayward is an entrenched player and dominates the market for

8  automatic suction-side pressure pool cleaners in the United States,

9  possessing a market share greater than 65%.

10     36.  There are significant and high barriers to market entry that

11  prevent other manufacturers from rapidly and meaningfully entering and/or

12  expanding in this relevant market, which include, but are not limited to, the

13  following:

14         (a)  Hayward's dominant market position as a monopolist of

15  automatic suction-side pool cleaners with a history of engaging in

16  exclusionary and anticompetitive conduct to eliminate competition;

17         (b)  patents, trademarks and other intellectual property rights

18  relating to automatic suction-side pool cleaner products;

19         (c)  a substantial up-front capital investment required to

20  penetrate and enter the market and provide pool cleaner units/replacement

21  parts;

22         (d)  a significant lead time to design and engineer pool cleaner

23  products/replacement parts and develop a reputation such that the

24  products can be successfully marketed and sold to buyers; and

25         (e)  requirement of access to a nationwide sales and

26  distribution network.

27     37.  Defendant Hayward has monopoly power in the relevant market,

28  as reflected by, *inter alia*, its substantial share of the automatic suction-

BLECHER & COLLINS
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW

- 13 -

side pool cleaner market; its ability to exclude competition in the market; and its ability to charge supracompetitive prices for automatic pool cleaners/replacement parts.

38.  Defendant Hayward's monopoly position in the relevant market has been acquired and maintained through intentional exclusionary and predatory conduct, as opposed to business acumen, or historic accident or by virtue of offering a superior product or service, greater efficiency or lower prices.

39.  Plaintiff AquaStar has the requisite standing to assert antitrust claims against defendant Hayward because it is a participant and competitor in the relevant market.

40.  The anticompetitive scheme and plan of defendant Hayward to attempt to monopolize and/or monopolize the above-described trade and commerce has been done with the intent to specifically eliminate plaintiff AquaStar as a viable competitor and threat to Hayward's automatic pool cleaner/replacement parts business, and to reduce competition in general. Hayward's overall exclusionary scheme to monopolize consists of at least the following anticompetitive acts/conduct to be viewed as a whole:

(a)  successfully threatened, intimidated and coerced actual and potential purchasers of AquaStar pool products not to deal with AquaStar;

(b)  induced, organized and implemented a group boycott of or concerted refusal to deal among buyers/distributors not to distribute or purchase plaintiff AquaStar's automatic pool cleaner/replacement part products;

(c)  conditioned the payment or allowance of discounts and rebates provided on the purchase of Hayward pool equipment products, including automatic pool cleaners/replacement parts, on an agreement not

BLECHER & COLLINS
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW

1    to deal with or purchase competitive pool cleaner products/parts from

2    AquaStar;

3              (d)  purchased quantities or inventories of AquaStar automatic

4    pool cleaners/replacement parts from retailers/distributors in order to

5    deprive consumers from the opportunity or alternative to purchase such

6    competitive products; and

7              (e)  threatened to revoke or terminate Hayward-authorized

8    dealer or warranty status from buyers/distributors that elect to purchase or

9    distribute AquaStar pool cleaners/replacement parts.

10         41.  Conduct is anticompetitive when it unnecessarily excludes or

11   handicaps competitors in order to gain or maintain a monopoly.

12   Anticompetitive or exclusionary practices are acts designed to deter

13   potential rivals from entering the market or prevent existing rivals from

14   increasing their output.  Anticompetitive acts are not competition on the

15   merits, but instead acts that have the effect of preventing or excluding

16   competition or frustrating the efforts of other companies to compete for

17   customers within the relevant market.  Conduct by a monopolist that

18   constitutes a deliberate effort to discourage customers from doing

19   business with its smaller rivals is anticompetitive.

20         42.  Defendant Hayward's anticompetitive and exclusionary conduct

21   described herein is not motivated or driven by technological or efficiency

22   concerns, and has no valid or legitimate business justification.  Rather, its

23   purpose and effect is to ensure that plaintiff AquaStar and other

24   competitive rivals in the relevant market cannot successfully invade or

25   erode defendant Hayward's dominant and entrenched market position.

26         43.  During the relevant time period, defendant Hayward and plaintiff

27   AquaStar have both designed, manufactured, marketed and sold

28   residential swimming pool automatic suction-side pool cleaners and

BLECHER & COLLINS
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW

1  associated replacement parts in the United States.  The marketing,

2  distribution and sale of such products directly involves, and substantially

3  affects, interstate commerce.  The violations of the Sherman and Clayton

4  Acts alleged herein adversely, directly and substantially affect the flow of

5  such products in interstate commerce.

6      44.  As alleged herein, defendant Hayward has engaged in an

7  anticompetitive scheme to prevent plaintiff AquaStar and other competitors

8  from manufacturing and selling competing automatic suction-side pool

9  cleaners and replacement parts, all for the purpose of maintaining and

10  increasing Hayward's market share and supracompetitive pricing on its

11  automatic pool cleaners/replacement parts.

12      45.  The aforesaid conduct of Hayward has produced antitrust injury,

13  and unless enjoined by this Court, will continue to produce at least the

14  following anticompetitive, exclusionary and injurious effects upon

15  competition in interstate commerce:

16      (a)  competition in the development of automatic pool cleaner

17  products/replacement parts has been substantially and unreasonably

18  restricted, lessened, foreclosed and eliminated;

19      (b)  barriers to entry into the market have been raised;

20      (c)  consumers choice has been, and will continue to be,

21  significantly limited and constrained as to selection, price and quality of

22  automatic pool cleaner products/replacement parts;

23      (d)  consumer access to AquaStar's competitive pool cleaner

24  products will be artificially restricted and reduced and its products will

25  continue to be excluded from the market;

26      (e)  the market for development and sale of automatic suction-

27  side pool cleaner products will continue to be artificially restrained or

28  monopolized; and

BLECHER & COLLINS
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW

1      (f)  Hayward will continue to charge supracompetitive prices to

2  the detriment of consumers.

3      46.  Defendant Hayward's predatory and exclusionary conduct has

4  caused antitrust injury to plaintiff AquaStar, competition and consumers.

5      47.  By reason of, and as a direct and proximate result of, defendant

6  Hayward's anticompetitive and exclusionary practices and conduct, plaintiff

7  AquaStar has suffered, and will continue to suffer, financial injury to its

8  business and property.  As a result, plaintiff has been deprived of revenue

9  and profits it would have otherwise made, has suffered diminished market

10  growth and sustained a loss of goodwill.  Plaintiff AquaStar has not yet

11  calculated the precise extent of its past damages and cannot now estimate

12  with precision the future damages that continue to accrue, but when it does

13  so, it will seek leave of the Court to insert the amount of the damages

14  sustained herein.

15  **SECOND CAUSE OF ACTION**

16  **(Attempted Monopolization in Violation of**

17  **Section 2 of the Sherman Act (15 U.S.C. § 2))**

18      48.  Plaintiff AquaStar hereby realleges and incorporates by

19  reference each allegation set forth in Paragraphs 1 through 47, as if set

20  forth in full herein.

21      49.  Section 2 of the Sherman Act (15 U.S.C. § 2) prohibits, *inter alia*,

22  attempts to monopolize any part of the trade or commerce among the

23  States.

24      50.  The relevant product market (or submarket) for antitrust

25  purposes in this case is defined as residential swimming pool automatic

26  suction-side pool cleaners and associated replacement parts.  The relevant

27  geographic market for antitrust purposes is the United States.

28      51.  Defendant Hayward's conduct and practices are anticompetitive,

BLECHER & COLLINS
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW

1  predatory and/or exclusionary.  Hayward's overall unlawful scheme is

2  described in paragraph 40, above.

3       52.  Plaintiff AquaStar has the requisite standing to assert antitrust

4  claims against defendant Hayward because it is a participant and

5  competitor in the relevant market.

6       53.  Absent action by this Court to enjoin and preclude defendant

7  Hayward from continuing its anticompetitive and exclusionary conduct,

8  there is a dangerous probability that Hayward will succeed in obtaining a

9  monopoly in the relevant market (or continue to monopolize), including the

10  power to set prices, reduce output or exclude competition in the market for

11  automatic suction-side pool cleaners/replacement parts.

12       54.  Defendant Hayward has undertaken its anticompetitive and

13  exclusionary conduct with the purpose of monopolizing, and with the

14  deliberate and specific intent to monopolize the market for automatic

15  suction-side pool cleaners in the United States.  Defendant Hayward

16  specifically intends to eliminate, destroy or foreclose meaningful

17  competition in the relevant market through the tactics and agreements

18  described above.  Hayward's conduct discourages and/or precludes

19  buyers/distributors of automatic pool cleaners/replacement parts from

20  dealing or contracting with competing manufacturers, such as plaintiff

21  AquaStar.  Hayward's scheme is designed to exclude and thwart

22  competition while allowing it to charge supracompetitive prices for its

23  automatic pool cleaners/replacement parts.

24       55.  As described above, significant and high barriers to market entry

25  exist that preclude or discourage new manufacturers from entering the

26  relevant market.  Significant barriers to expansion also exist because only

27  a small number of competitors have managed to marginally penetrate this

28  market.

BLECHER & COLLINS
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW

56.  Defendant Hayward's anticompetitive acts affect a substantial amount of interstate commerce in the relevant market and constitute attempted monopolization in violation of Section 2 of the Sherman Act. Defendant Hayward's conduct is not motivated by technological or efficiency concerns and has no valid or legitimate business justification. Instead, its purpose and effect is to further or preserve its monopoly position and stranglehold, and to injure consumer welfare, plaintiff AquaStar and other competitive rivals in the relevant market.

57.  Defendant Hayward's anticompetitive acts have caused substantial economic injury to plaintiff AquaStar, and have also injured competition in the relevant market by, *inter alia*, foreclosing, lessening and eliminating competition and depriving buyers/distributors from securing lower cost or higher quality alternatives, or both, for automatic suction-side pool cleaners/replacement parts.

58.  The aforesaid conduct of Hayward has produced antitrust injury, and unless enjoined by this Court, will continue to produce at least the following anticompetitive, exclusionary and injurious effects upon competition in interstate commerce:

(a)  competition in the development of automatic pool cleaner products/replacement parts has been substantially and unreasonably restricted, lessened, foreclosed and eliminated;

(b)  barriers to entry into the market have been raised;

(c)  consumers choice has been, and will continue to be, significantly limited and constrained as to selection, price and quality of automatic pool cleaner products/replacement parts;

(d)  consumer access to AquaStar's competitive pool cleaner products will be artificially restricted and reduced and its products will continue to be excluded from the market;

BLECHER & COLLINS
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW

1        (e)  the market for development and sale of automatic suction-

2    side pool cleaner products will continue to be artificially restrained or

3    monopolized; and

4        (f)  Hayward will continue to charge supracompetitive prices to

5    the detriment of consumers.

6        59.  Defendant Hayward's predatory and exclusionary conduct has

7    caused antitrust injury to plaintiff AquaStar, competition and consumers.

8        60.  By reason of, and as a direct and proximate result of defendant

9    Hayward's practices and conduct, plaintiff AquaStar has suffered, and will

10   continue to suffer, financial injury to its business and property.  As a result,

11   plaintiff has been deprived of revenue and profits it would have otherwise

12   made, suffered diminished market growth and sustained a loss of goodwill.

13   Plaintiff AquaStar has not yet calculated the precise extent of its past

14   damages and cannot now estimate with precision the future damages that

15   continue to accrue, but when it does so, it will seek leave of the Court to

16   insert the amount of the damages sustained herein.

17   **THIRD CAUSE OF ACTION**

18   **(Unlawful Arrangements in Violation of**

19   **Section One of the Sherman Act (15 U.S.C. § 1))**

20       61.  Plaintiff AquaStar hereby alleges and incorporates by reference

21   each allegation set forth in Paragraphs 1 through 60 and 76 through 91, as

22   if set forth in full herein.

23       62.  Section 1 of the Sherman Act (15 U.S.C. § 1) prohibits, *inter alia*,

24   agreements or arrangements that unreasonably restrain competition to the

25   detriment of consumers.

26       63.  Hayward's conduct has been highly successful in distorting

27   and/or eliminating competition in the relevant market by forcing customers

28   to choose Hayward automatic suction-side pool cleaners/replacement

BLECHER & COLLINS
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW

1 parts over that of substantially lower priced and/or better quality products
2 from plaintiff AquaStar.

3    64.  The relevant product market (or submarket) for antitrust
4 purposes in this case is defined as residential swimming pool automatic
5 suction-side pool cleaners and associated replacement parts.  The relevant
6 geographic market for antitrust purposes is the United States.

7    65.  Defendant Hayward has sufficient economic power in the
8 relevant market.  Hayward's market share is in excess of 65%.  Hayward
9 has a significant economic interest in the market and clearly dominates
10 and controls that market.

11    66.  Plaintiff AquaStar has the requisite standing to assert antitrust
12 claims against defendant Hayward because it is a participant and
13 competitor in the relevant market.

14    67.  The anticompetitive scheme and plan of defendant Hayward to
15 unreasonably restrain trade in the above-described trade and commerce
16 has been done with the intent to specifically eliminate plaintiff AquaStar as
17 a viable competitor and threat to Hayward's automatic pool
18 cleaner/replacement parts business, and to reduce competition in general.
19 These agreements and combinations constitute unreasonable restraints of
20 trade.  The overall anticompetitive scheme consists of at least the following
21 acts/conduct to be viewed as a whole:

22        (a)  successfully threatened, intimidated and coerced actual
23 and potential purchasers of AquaStar pool products not to deal with
24 AquaStar;

25        (b)  induced, organized and implemented a group boycott of or
26 concerted refusal to deal among buyers/distributors not to distribute or
27 purchase plaintiff AquaStar's automatic pool cleaner/replacement part
28 products; and

BLECHER & COLLINS
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW

(c) conditioned the payment or allowance of discounts and rebates provided on the purchase of Hayward pool equipment products, including automatic pool cleaners/replacement parts, on an agreement not to deal with or purchase competitive products/parts from AquaStar.

68.  As a direct result of the foregoing anticompetitive conduct and restrictions on competition, buyers/distributors pay Hayward higher prices for automatic pool cleaners/replacement parts than they would in a fully competitive and open market, output has been limited and the quality and choice of automatic suction-side pool cleaner products has been reduced and diminished in that market.  There are no business, technological or efficiency reasons or justifications that require defendant Hayward to impose these anticompetitive conditions and restrictions.

69.  Hayward's restrictions, threats and arrangements have created a barrier that precludes effective entry by other competitors into the relevant market and the quality and variety of offerings in that market have been reduced and constrained.

70.  Defendant Hayward's arrangements are unlawful under the antitrust laws when assessed under the "Rule of Reason."  The anticompetitive consequences of Hayward's conduct outweigh any procompetitive effects thereof.  Due to Hayward's significant market power in the relevant market and the dominant position it has obtained, competition in that market has been significantly impaired by defendant Hayward's conduct.

71.  The aforesaid conduct of Hayward has produced antitrust injury, and unless enjoined by this Court, will continue to produce at least the following anticompetitive, exclusionary and injurious effects upon competition in interstate commerce:

(a) competition in the development of automatic pool cleaner

1  products/replacement parts has been substantially and unreasonably

2  restricted, lessened, foreclosed and eliminated;

3        (b)  barriers to entry into the market have been raised;

4        (c)  consumers choice has been, and will continue to be,

5  significantly limited and constrained as to selection, price and quality of

6  automatic pool cleaner products/replacement parts;

7        (d)  consumer access to AquaStar's competitive pool cleaner

8  products will be artificially restricted and reduced and its products will

9  continue to be excluded from the market;

10        (e)  the market for development and sale of automatic suction-

11  side pool cleaner products will continue to be artificially restrained or

12  monopolized; and

13        (f)  Hayward will continue to charge supracompetitive prices to

14  the detriment of consumers.

15     72.  Defendant Hayward's restrictions and arrangements affect a

16  substantial volume of interstate commerce in the relevant market.

17     73.  Defendant Hayward's predatory and exclusionary conduct has

18  caused antitrust injury to plaintiff AquaStar, competition and consumers.

19     74.  By reason of, and as a direct and proximate result of defendant

20  Hayward's practices and conduct, plaintiff AquaStar has suffered, and will

21  continue to suffer, financial injury to its business and property.  As a result,

22  plaintiff has been deprived of revenues and profits it would have otherwise

23  made, suffered diminished market growth and sustained a loss of goodwill.

24  Plaintiff has not yet calculated the precise extent of its past damages and

25  cannot now estimate with precision the future damages that continue to

26  accrue, but when it does so, it will seek leave of the Court to insert the

27  amount of the damages sustained herein.

28  ///

BLECHER & COLLINS
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW

## FOURTH CAUSE OF ACTION

### (Unlawful Exclusionary Arrangements in Violation of
### Section 3 of the Clayton Act (15 U.S.C. § 14))

75.  Plaintiff AquaStar hereby alleges and incorporates by reference each allegation set forth in Paragraphs 1 through 74, as if set forth in full herein.

76.  Section 3 of the Clayton Act (15 U.S.C. § 14), makes it unlawful, *inter alia*, "[f]or any person. . .to lease or make a sale or contract for sale of goods. . .on the condition, agreement, or understanding that the lessee or purchaser thereof shall not use or deal in the goods. . .of a competitor. . .of the lessor or seller, where the effect. . .may be to substantially lessen competition or tend to create a monopoly" in the relevant market.  Under Section 3, the conditioning of the offer, allowance or payment of rebates or discounts to preclude or exclude the use of a competitors products is also unlawful. Id.  Arrangements and contracts whose probable effect is to foreclose competition in a substantial share or segment of the line of commerce affected violate Section 3.

77.  The relevant product market (or submarket) for antitrust purposes in this case is defined as residential swimming pool automatic suction-side pool cleaners and associated replacement parts.  The relevant geographic market for antitrust purposes is the United States.

78.  Hayward dominates the market for automatic suction-side pool cleaners in the United States, possessing a market share greater than 70%.

79.  There are significant and high barriers to market entry that prevent other manufacturers from rapidly and meaningfully entering and/or expanding in the relevant market, which include but are not limited to the following:

- 24 -

1   (a)  Hayward's dominant market position as a monopolist of

2   automatic suction pool cleaners with a history of engaging in exclusionary

3   and anticompetitive conduct to eliminate competition;

4   (b)  patents, trademarks and other intellectual property rights

5   relating to automatic suction pool cleaner products;

6   (c)  a substantial up-front capital investment required to

7   penetrate and enter the market and provide pool cleaner units/replacement

8   parts;

9   (d)  a significant lead time to design and engineer pool cleaner

10  products/replacement parts and develop a reputation such that the

11  products can be successfully marketed and sold to buyers; and

12  (e)  requirement of access to a nationwide sales and

13  distribution network.

14  80.  Plaintiff AquaStar has the requisite standing to assert antitrust

15  claims against defendant Hayward because it is a participant and

16  competitor in the relevant market.

17  81.  The anticompetitive scheme and plan of defendant Hayward to

18  substantially lessen competition and create a monopoly in the above-

19  described trade and commerce has been done with the intent to

20  specifically eliminate plaintiff AquaStar as a viable competitor and threat to

21  Hayward's automatic pool cleaner/replacement parts business, and to

22  reduce competition in general.  Hayward's overall anticompetitive scheme

23  consists of at least the following acts/conduct to be viewed as a whole:

24  (a)  successfully threatened, intimidated and coerced actual

25  and potential purchasers of AquaStar pool cleaner products not to deal

26  with AquaStar;

27  (b)  induced, organized and implemented a group boycott of or

28  concerted refusal to deal among buyers/distributors not to distribute or

BLECHER & COLLINS
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW

1   purchase plaintiff AquaStar's automatic pool cleaner/replacement part

2   products; and

3           (c) conditioned the payment or allowance of discounts and

4   rebates provided on the purchase of Hayward pool equipment products,

5   including automatic pool cleaners/replacement parts, on an agreement not

6   to deal with or purchase competitive products/parts from AquaStar.

7           82. Exclusive dealing arrangements have the effect of inducing or

8   coercing a buyer to purchase most, or all, products for a period of time

9   from one supplier.  The arrangement may take the form of a requirements

10  contract committing the buyer to purchase all (or a substantial portion) of

11  its requirements of a specific product only from one supplier.  Such

12  unlawful arrangements also include pricing or rebate policies that create a

13  substantial disincentive to purchase products from competitive sources.

14          83. Exclusionary arrangements do not actually have to prescribe

15  exclusivity to be deemed unlawful under Section 3.  Such "de facto"

16  arrangements, understandings and/or contracts are anticompetitive if they

17  create or maintain market power resulting in the exclusion of rivals.

18          84. Exclusionary arrangements or contracts can be found illegal

19  even though the contract/arrangement does not contain specific

20  agreements not to use the products of a competitor, if the practical effect is

21  to prevent such use or purchase.  Further, contracts or arrangements

22  utilized by a monopolist that provide price discounts or rebates to induce a

23  buyer to purchase most, or all, of their product needs, but do not require

24  absolute exclusivity are also unlawful de facto exclusive dealing

25  arrangements.

26          85. Defendant Hayward's anticompetitive and exclusionary conduct

27  described herein is not motivated or driven by technological or efficiency

28  concerns, and has no valid or legitimate business justification.  Rather, its

1  purpose and effect is to ensure that plaintiff AquaStar and other

2  competitive rivals in the relevant market cannot successfully invade or

3  erode defendant Hayward's dominant and entrenched market position.

4  　　　86.  During the relevant time period, defendant Hayward and plaintiff

5  AquaStar have both designed, manufactured, marketed and sold

6  residential swimming pool automatic suction-side pool cleaners and

7  associated replacement parts in the United States.  The marketing,

8  distribution and sale of such products directly involves, and substantially

9  affects, interstate commerce.  The violations of the Clayton Act alleged

10  herein adversely, directly and substantially affect the flow of such products

11  in interstate commerce.

12  　　　87.  The aforesaid conduct of Hayward has produced antitrust injury,

13  and unless enjoined by this Court, will continue to produce at least the

14  following anticompetitive, exclusionary and injurious effects upon

15  competition in interstate commerce:

16  　　　　　(a)  competition in the development of automatic pool cleaner

17  products/replacement parts has been substantially and unreasonably

18  restricted, lessened, foreclosed and eliminated;

19  　　　　　(b)  barriers to entry into the market have been raised;

20  　　　　　(c)  consumers choice has been, and will continue to be,

21  significantly limited and constrained as to selection, price and quality of

22  automatic pool cleaner products/replacement parts;

23  　　　　　(d)  consumer access to AquaStar's competitive products will

24  be artificially restricted and reduced and its products will continue to be

25  excluded from the market;

26  　　　　　(e)  the market for development and sale of automatic suction-

27  side pool cleaner products will continue to be artificially restrained or

28  monopolized; and

BLECHER & COLLINS
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW

1    (f)  Hayward will continue to charge supracompetitive prices to

2    the detriment of consumers.

3    88.  Defendant Hayward's practices, described above, have

4    foreclosed competition in a substantial share of the relevant market and

5    have substantially lessened competition any or tended to create a

6    monopoly for Hayward in the relevant market.

7    89.  Defendant Hayward's exclusionary agreements, arrangements

8    and/or contracts have caused antitrust injury to plaintiff AquaStar,

9    competition and consumers.  Conduct that restricts consumer choice or

10   makes the market unresponsive to consumer preference harms consumers

11   and results in antitrust injury.  When an agreement detrimentally changes

12   the market makeup and limits consumers' choice to one source of output

13   this causes cognizable antitrust injury of preventing its victims from making

14   free and unhindered choices between market alternatives.

15   90.  Defendant Hayward's predatory and exclusionary conduct has

16   caused antitrust injury to plaintiff AquaStar, competition and consumers.

17   91.  By reason of, and as a direct and proximate result of defendant

18   Hayward's practices and conduct, plaintiff AquaStar has suffered, and will

19   continue to suffer, financial injury to its business and property.  As a result,

20   plaintiff has been deprived of revenues and profits it would have otherwise

21   made, suffered diminished market growth and sustained a loss of goodwill.

22   Plaintiff has not yet calculated the precise extent of its past damages and

23   cannot now estimate with precision the future damages that continue to

24   accrue, but when it does so, it will seek leave of the Court to insert the

25   amount of the damages sustained herein.

26   ///

27   ///

28   ///

BLECHER & COLLINS
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW

# FIFTH CAUSE OF ACTION

## (Intentional Interference Prospective Economic Advantage and Actual Contractual Relationships)

92. Plaintiff AquaStar hereby alleges and incorporates by reference each allegation set forth in Paragraphs 1 through 91, as if set forth in full herein.

93. This Court has jurisdiction over this Fifth Cause of Action based on the doctrine of supplemental jurisdiction (28 U.S.C. § 1367) because this Fifth Cause of Action arises from the same transactions and from a common nucleus of operative facts as alleged in the first five federal causes of actions.

94. Plaintiff AquaStar has existing and valuable business relationships, as well as reasonable expectations of further and future relationships, with buyers/distributors of automatic suction-side pool cleaners/replacement parts.

95. Defendant Hayward was aware of these prospective business and actual contractual relationships and engaged in intentional and wrongful conduct designed or calculated to disrupt and interfere with those relationships.

96. Defendant Hayward's conduct in interfering with such prospective business and actual contractual relations is intentional, malicious and without justification. Hayward's conduct and overall scheme was undertaken solely to hinder, if not eliminate, competition so that Hayward can continue to reap supracompetitive prices and profits on automatic pool cleaners/replacement parts. Hayward's anticompetitive conduct was not privileged or excused and was without any legitimate business justification. Hayward has knowingly engaged in such wrongful conduct for the purpose of excluding competition and to deprive

BLECHER & COLLINS
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW

1   consumers of the benefits of free and open competition.

2   97.  Defendant Hayward's conduct was a substantial factor in

3   causing financial injury to plaintiff AquaStar and has rendered it more

4   difficult for plaintiff to remain and survive as a viable competitor.

5   98.  Plaintiff AquaStar's business and goodwill has been, and will

6   continue to be, substantially injured by Hayward's conduct.  Additionally,

7   actual and prospective customers of plaintiff AquaStar will continue to be

8   injured and harmed by Hayward's acts and practices.  Although plaintiff

9   AquaStar has incurred substantial losses as a proximate result of the

10  foregoing acts, and will continue to incur substantial losses in the future as

11  well as its growth being negatively impacted, all such losses may be

12  difficult to calculate with precision.  Therefore, in addition to any

13  recoverable damages proximately caused by Hayward's wrongful conduct,

14  plaintiff AquaStar also seeks a permanent injunction preventing Hayward

15  from continued interference in the future.

16  99.  The intentional and disruptive conduct of defendant Hayward is

17  willful, malicious and oppressive.  Consequently, an award of exemplary or

18  punitive damages in an amount sufficient to punish and deter Hayward is

19  justified.

20  ### SIXTH CAUSE OF ACTION

21  **(Unfair Competition in Violation of**

22  **Cal. Bus. & Prof. Code § 17200 *et seq.*)**

23  100.  Plaintiff AquaStar hereby realleges and incorporates by

24  reference each allegation set forth in Paragraphs 1 through 99, as if set

25  forth in full herein.

26  101.  This Court has jurisdiction over this Sixth Cause of Action

27  based on the doctrine of supplemental jurisdiction (28 U.S.C. § 1367)

28  because this Sixth Cause of Action arises from the same transactions and

BLECHER & COLLINS
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW

1   from a common nucleus of operative facts as alleged in the first five federal

2   causes of action.

3        102.  Section 17200 *et seq*. of the California Business & Professions

4   Code is written in the disjunctive and broadly covers three varieties of

5   unfair competition – acts that are unlawful or unfair or fraudulent.  The

6   statute's intent and purpose is to protect both consumers and competitors

7   by promoting fair competition in commercial markets for goods and

8   services.

9        103.  Plaintiff AquaStar is a "person" within the meaning of California

10   Business & Professions Code § 17201.

11        104.  As alleged herein, defendant Hayward's conduct constitutes

12   "unfair" business practices.  A practice may be deemed unfair even if not

13   specifically proscribed by some other law.  Conduct that significantly

14   threatens or harms competition, or threatens an incipient violation of an

15   antitrust law, may be deemed to be "unfair."

16        105.  As alleged herein, defendant Hayward's anticompetitive

17   conduct is also "unlawful."  Within the meaning of § 17200, virtually any

18   violation of any civil or criminal federal, state or municipal, statutory,

19   regulatory, court-made or local law can serve as a predicate for an

20   "unlawful" claim.  Defendant Hayward's violations of the federal antitrust

21   laws as alleged herein, satisfy the "unlawful" prong of § 17200.

22        106.  By reason of, and as a direct and proximate result of defendant

23   Hayward's unfair and unlawful practices and conduct, plaintiff AquaStar

24   has suffered and will continue to suffer, financial injury to its business and

25   property.

26        107.  Defendant Hayward's unfair and unlawful conduct has caused

27   harm to plaintiff AquaStar, competition and consumers.

28   ///

BLECHER & COLLINS
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW

108.   Pursuant to Section 17203, the entry of permanent and mandatory injunctive relief against defendant Hayward is necessary to enjoin Hayward's ongoing wrongful business conduct.  An injunction is needed to enable and restore competition in the market for automatic suction pool cleaners/replacement parts.

## PRAYER FOR RELIEF

WHEREFORE plaintiff AquaStar prays that this Court adjudges and decrees and follows:

1.   That the conduct alleged in the First Cause of Action herein be adjudged to be unlawful monopolization in violation of Section 2 of the Sherman Act (15 U.S.C. § 2);

2.   That the conduct alleged in the Second Cause of Action herein be adjudged to be an unlawful attempt to monopolize in violation of Section 2 of the Sherman Act (15 U.S.C. § 2);

3.   That the conduct alleged in the Third Cause of Action herein be adjudged to be an unreasonable restraint of trade in violation of Section 1 of the Sherman Act (15 U.S.C. § 1);

4.   That the conduct alleged in the Fourth Cause of Action herein be adjudged to be in violation of Section 3 of the Clayton Act (15 U.S.C. § 14);

5.   That the conduct alleged in the Fifth Cause of Action herein be adjudged to constitute intentional interference with prospective economic advantage and actual contractual relationships;

6.   That the conduct alleged in the Sixth Cause of Action herein be adjudged to be unfair and/or unlawful in violation of Section 17200 *et seq.* of the California Business & Professions Code;

7.   That, pursuant to Section 4 of the Clayton Act (15 U.S.C. § 15), plaintiff recover treble the actual amount of its damages sustained by reason of those federal antitrust violations;

BLECHER & COLLINS
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW

8.  That, pursuant to Section 4 of the Clayton Act (15 U.S.C. § 15), plaintiff be awarded a reasonable attorneys' fee and costs of litigation;

9.  That, pursuant to Section 16 of the Clayton Act (15 U.S.C. § 26), the anticompetitive, predatory and/or exclusionary conduct of defendant Hayward be permanently enjoined;

10.  That plaintiff AquaStar be awarded punitive or exemplary damages on its tort claim;

11.  That, pursuant to § 17203 of the California Business & Professions Code, the unfair and/or unlawful business practices of defendant Hayward be permanently enjoined;

12.  That pursuant to Section 1021.5 of the California Code of Civil Procedure, plaintiff be awarded reasonable attorneys' fees; and

13.  For such other and further relief as the Court deems just and proper.

Dated:  August  10, 2011

BLECHER & COLLINS, P.C.
MAXWELL M. BLECHER
DONALD R. PEPPERMAN
JENNIFER S. ELKAYAM

By: _____
MAXWELL M. BLECHER
Attorneys for Plaintiff
AquaStar Pool Products, Inc.

BLECHER & COLLINS
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW

- 33 -

1

## DEMAND FOR JURY TRIAL

2          Plaintiff AquaStar hereby demands trial by jury pursuant to Rule

3   38(b) of the Federal Rules of Civil Procedure and Local Rule 38-1.

4

5   Dated:  August 10, 2011                    BLECHER & COLLINS, P.C.
                                               MAXWELL M. BLECHER
6                                              DONALD R. PEPPERMAN
                                               JENNIFER S. ELKAYAM
7

8                                      By:
9                                               MAXWELL M. BLECHER
                                                 Attorneys for Plaintiff
10                                          AquaStar Pool Products, Inc.

11

12

13

46320.1

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

This case has been assigned to District Judge Consuelo B. Marshall and the assigned discovery Magistrate Judge is Patrick J. Walsh.

The case number on all documents filed with the Court should read as follows:

## CV11- 6586 CBM (PJWx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge

===================================================

## NOTICE TO COUNSEL

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

| | | |
|---|---|---|
| [X] **Western Division**<br>312 N. Spring St., Rm. G-8<br>Los Angeles, CA 90012 | [ ] **Southern Division**<br>411 West Fourth St., Rm. 1-053<br>Santa Ana, CA 92701-4516 | [ ] **Eastern Division**<br>3470 Twelfth St., Rm. 134<br>Riverside, CA 92501 |

Failure to file at the proper location will result in your documents being returned to you.

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

AQUASTAR POOL PRODUCTS, INC., a California corporation,

PLAINTIFF(S)

v.

HAYWARD INDUSTRIES, INC., a New Jersey corporation; HAYWARD POOL PRODUCTS, INC.,

DEFENDANT(S) .

CASE NUMBER

CV11-C6586 CBM (PJWx)

**SUMMONS**

TO:   DEFENDANT(S): _____

A lawsuit has been filed against you.

Within __21__ days after service of this summons on you (not counting the day you received it), you must serve on the plaintiff an answer to the attached [X] complaint [ ] _____ amended complaint [ ] counterclaim [ ] cross-claim or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff's attorney, _Maxwell M. Blecher_____ , whose address is _Blecher & Collins, P.C., 515 S. Figueroa St., Suite 1750, Los Angeles, CA  90071_____ . If you fail to do so, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

Clerk, U.S. District Court

Dated: __August 10, 2011_____         By: _____

Deputy Clerk

*(Seal of the Court)*

*[Use 60 days if the defendant is the United States or a United States agency, or is an officer or employee of the United States. Allowed 60 days by Rule 12(a)(3)].*

### UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
#### CIVIL COVER SHEET

| I (a) PLAINTIFFS   (Check box if you are representing yourself ☐ ) | DEFENDANTS |
|---|---|
| AQUASTAR POOL PRODUCTS, INC., a California corporation | HAYWARD INDUSTRIES, INC., a New Jersey corporation; HAYWARD POOL PRODUCTS, INC. |

| (b) Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.) | Attorneys (If Known) |
|---|---|
| Maxwell M. Blecher (SBN 26202)<br>Donald R. Pepperman (SBN 109809)<br>BLECHER & COLLINS, P.C.<br>515 S. Figueroa St., Suite 1750<br>Los Angeles, CA 90071<br>213-622-4222 | |

**II.   BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1 U.S. Government Plaintiff
☒ 3 Federal Question (U.S. Government Not a Party)

☐ 2 U.S. Government Defendant
☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III.   CITIZENSHIP OF PRINCIPAL PARTIES** - For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant.)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☒ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV.   ORIGIN** (Place an X in one box only.)

☒ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district (specify):
☐ 6 Multi-District Litigation
☐ 7 Appeal to District Judge from Magistrate Judge

**V.   REQUESTED IN COMPLAINT:   JURY DEMAND:** ☒ Yes   ☐ No (Check 'Yes' only if demanded in complaint.)

**CLASS ACTION under F.R.C.P. 23:** ☐ Yes ☒ No        ☐ **MONEY DEMANDED IN COMPLAINT: $** _____

**VI.   CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)

1) SECTION ONE OF THE SHERMAN ACT – ACTUAL MONOPOLIZATION; 2) SECTION TWO OF THE SHERMAN ACT – ATTEMPT TO MONOPOLIZE; 3) SECTION ONE OF THE SHERMAN ACT; 4) SECTION 3 OF THE CLAYTON ACT; 5) INTENTIONAL INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE AND ACTUAL CONTRACTUAL RELATIONS; AND 6) CAL. BUS. & PROF. CODE § 17200 et seq - UNFAIR COMPETITION

**VII.   NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | TORTS PERSONAL INJURY | TORTS PERSONAL PROPERTY | PRISONER PETITIONS | LABOR |
|---|---|---|---|---|---|
| ☐ 400 State Reapportionment | ☐ 110 Insurance | ☐ 310 Airplane | ☐ 370 Other Fraud | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 710 Fair Labor Standards Act |
| ☒ 410 Antitrust | ☐ 120 Marine | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | ☐ 530 General | ☐ 720 Labor/Mgmt. Relations |
| ☐ 430 Banks and Banking | ☐ 130 Miller Act | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 535 Death Penalty | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act |
| ☐ 450 Commerce/ICC Rates/etc. | ☐ 140 Negotiable Instrument | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 540 Mandamus/Other | ☐ 740 Railway Labor Act |
| ☐ 460 Deportation | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 340 Marine | **BANKRUPTCY** | ☐ 550 Civil Rights | ☐ 790 Other Labor Litigation |
| ☐ 470 Racketeer Influenced and Corrupt Organizations | | ☐ 345 Marine Product Liability | ☐ 422 Appeal 28 USC 158 | ☐ 555 Prison Condition | ☐ 791 Empl. Ret. Inc. Security Act |
| ☐ 480 Consumer Credit | ☐ 151 Medicare Act | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | **FORFEITURE/PENALTY** | **PROPERTY RIGHTS** |
| ☐ 490 Cable/Sat TV | ☐ 152 Recovery of Defaulted Student Loan (Excl. Veterans) | ☐ 355 Motor Vehicle Product Liability | **CIVIL RIGHTS** | ☐ 610 Agriculture | ☐ 820 Copyrights |
| ☐ 810 Selective Service | | ☐ 360 Other Personal Injury | ☐ 441 Voting | ☐ 620 Other Food & Drug | ☐ 830 Patent |
| ☐ 850 Securities/Commodities/Exchange | ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 362 Personal Injury-Med Malpractice | ☐ 442 Employment | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 840 Trademark |
| ☐ 875 Customer Challenge 12 USC 3410 | ☐ 160 Stockholders' Suits | ☐ 365 Personal Injury-Product Liability | ☐ 443 Housing/Accommodations | | **SOCIAL SECURITY** |
| ☐ 890 Other Statutory Actions | ☐ 190 Other Contract | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 444 Welfare | ☐ 630 Liquor Laws | ☐ 861 HIA (1395ff) |
| ☐ 891 Agricultural Act | ☐ 195 Contract Product Liability | | ☐ 445 American with Disabilities - Employment | ☐ 640 R.R. & Truck | ☐ 862 Black Lung (923) |
| ☐ 892 Economic Stabilization Act | ☐ 196 Franchise | **REAL PROPERTY** | | ☐ 650 Airline Regs | ☐ 863 DIWC/DIWW (405(g)) |
| ☐ 893 Environmental Matters | **REAL PROPERTY** | ☐ 210 Land Condemnation | ☐ 446 American with Disabilities - Other | ☐ 660 Occupational Safety/Health | ☐ 864 SSID Title XVI |
| ☐ 894 Energy Allocation Act | ☐ 210 Land Condemnation | ☐ 220 Foreclosure | ☐ 440 Other Civil Rights | ☐ 690 Other | ☐ 865 RSI (405(g)) |
| ☐ 895 Freedom of Info. Act | ☐ 220 Foreclosure | ☐ 230 Rent Lease & Ejectment | **IMMIGRATION** | | **FEDERAL TAX SUITS** |
| ☐ 900 Appeal of Fee Determination Under Equal Access to Justice | ☐ 230 Rent Lease & Ejectment | ☐ 240 Torts to Land | ☐ 462 Naturalization Application | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| ☐ 950 Constitutionality of State Statutes | ☐ 240 Torts to Land | ☐ 245 Tort Product Liability | ☐ 463 Habeas Corpus-Alien Detainee | | ☐ 871 IRS - Third Party 26 USC 7609 |
| | ☐ 245 Tort Product Liability | ☐ 290 All Other Real Property | ☐ 465 Other Immigration Actions | | |
| | ☐ 290 All Other Real Property | | | | |

CV11-06586

**FOR OFFICE USE ONLY:**   Case Number: _____

**AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.**

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**
**CIVIL COVER SHEET**

**VIII(a).   IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed? [X] No   [ ] Yes

If yes, list case number(s):

**VIII(b).   RELATED CASES:** Have any cases been previously filed in this court that are related to the present case? [X] No   [ ] Yes

If yes, list case number(s):

Civil cases are deemed related if a previously filed case and the present case:

(Check all boxes that apply)   [ ]   A.   Arise from the same or closely related transactions, happenings, or events; or

[ ]   B.   Call for determination of the same or substantially related or similar questions of law and fact; or

[ ]   C.   For other reasons would entail substantial duplication of labor if heard by different judges; or

[ ]   D.   Involve the same patent, trademark or copyright, _and_ one of the factors identified above in a, b or c also is present.

**IX.   VENUE:**  (When completing the following information, use an additional sheet if necessary.)

(a)   List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named plaintiff resides.

[ ]   Check here if the government, its agencies or employees is a named plaintiff.  If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| | San Diego, California |

(b)   List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named defendant resides.

[ ]   Check here if the government, its agencies or employees is a named defendant.  If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| | Union County, New Jersey |

(c)   List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** claim arose.

**Note: In land condemnation cases, use the location of the tract of land involved.**

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Ventura, California | |

* **Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties**

Note: In land condemnation cases, use the location of the tract of land involved

**X.   SIGNATURE OF ATTORNEY (OR PRO PER):** _Maxwell M. Blecher_   Date   August 10, 2011

**Notice to Counsel/Parties:**  The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law.  This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet.  (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. (g)) |